IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE, DIVISION

SPACE ENERGY TIME SAVINGS (S.E.T.S.)
SYSTEMS, INC.,

        Plaintiff,

v.

UNDERWRITERS LABORATORIES, INC.

        Defendant.

_____/

CASE NO.:

CIV - HUCK

MAGISTRATE JUDGE
TURNOFF

## NOTICE OF REMOVAL

To:    Lawrence A. Franco, Esq.
       8751 W. Broward Blvd.
       Suite 410
       Plantation, FL 33324

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant, UNDERWRITERS

LABORATORIES, INC., gives notice of removal of the above-entitled action from the Circuit Court

of the 17th Judicial Circuit in and for Broward County, Florida to the United States District Court,

Southern District of Florida, Fort Lauderdale Division.

    1.      On August 28, 2002, an action was commenced in the state court by the filing of a

complaint styled Space Energy Time Saving (S.E.T.S.) Systems, Inc., v. Underwriters Laboratory,

Case No. 02-016648(04), in the Circuit Court of the 17th Judicial Circuit in and for Broward County,

Florida.

    2.      On August 29, 2002, a copy of the summons and Complaint was served on the

Defendant.

    3.      A certified copy of the Complaint and the Summons, constituting all of the papers

and pleadings served on Defendant, are attached to this notice as Composite Exhibit "A.".

4.     This court has jurisdiction of the action pursuant to 28 U.S.C.A. § 1332. Specifically,

Plaintiff seeks the recovery of damages exceeding $75,000.00 (see Complaint ¶ 35) and Plaintiff and

Defendant are citizens of different states.

5.     This action is therefore properly removed pursuant to 28 U.S.C.A. § 1441(b).

6.     Written notice of the filing of this notice of removal is being served this date on

Plaintiff's counsel of record.

7.     A true and correct copy of this notice of removal is being filed this date with the Clerk

of Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida.

8.     Defendant desires to remove this action to federal court as provided by law.

                    Respectfully submitted,

                    GREENSPOON, MARDER, HIRSCHFELD,
                    RAFKIN, ROSS & BERGER, P.A.
                    Attorneys for Defendant, Underwriters
                    Laboratories, Inc.
                    Trade Centre South, Suite 700
                    100 West Cypress Creek Road
                    Fort Lauderdale, Florida 33309
                    (954) 491-1120 (Broward)
                    (888) 491-1120 (Toll Free)
                    (954) 771-9264 (Telecopier)


          BY: _____
                    RICHARD W. EPSTEIN
                    Florida Bar No. 229091
                    HAAS A. HATIC
                    Florida Bar No. 843989

Dated: September 18, 2002

2



IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.   02016648



SPACE ENERGY TIME SAVINGS (S.E.T.S.) SYSTEMS, INC.,

    Plaintiff,

v.

UNDERWRITERS LABORATORIES, INC.,

    Defendant.

_____/

## COMPLAINT

The Plaintiff, SPACE ENERGY TIME SAVINGS (S.E.T.S.) SYSTEMS, INC.,

("SETS"), by and through the undersigned counsel, hereby sues the Defendant, Underwriters

Laboratories, Inc., ("UL"), and states as follows:

### JURISDICTION AND VENUE

1.    This is an action for money damages in excess of $15,000.00 and it is within the

plenary jurisdiction of the Circuit Court.

2.    The Plaintiff, SETS, is, and was, at all times material hereto, a Florida corporation

with its principal place of business in Miami-Dade County, Florida.

3.    The Defendant, UL, is and was, at all times material hereto a Delaware

corporation that has been authorized to, and does, do business in the State of Florida, and

specifically has a field office in Broward County, Florida.

4.    Venue is proper in Broward County, Florida as it is the place where the Defendant

can be found and where venue is proper pursuant to Fla. Stat. §47.051.

*CASE NO.*

## GENERAL ALLEGATIONS

5.      The Plaintiff has been in the business of developing and manufacturing tankless water heaters since December, 1995.

6.      During that time, the Plaintiff has invested several hundred thousand dollars into the development of its product, its brand name and the market for tankless water heaters in general. In fact, the Plaintiff has been recognized by NASA as a technical research development authority.

7.      Because the Plaintiff's product deals with a combination of electrical components, the Plaintiff was compelled to send its products to the Defendant, UL to be approved for use, as it is the industry standard for electrical products to be UL certified before they are used by most contractors. Moreover, many building codes require the use of UL listed equipment.

8.      Accordingly, in 1996, the Plaintiff submitted its model numbers S220, S208 and I220 to UL for approval, which items were approved shortly thereafter.

9.      From 1996 until 1998, the Plaintiff dedicated substantial effort and capital in developing a substantial part of the market share for household water heaters.

10.     As the technology developed and more manufacturers began making tankless water heaters, the Plaintiff had developed two new models, the 180 and the 220 in the latter part of 1999.

11.     In actuality these "new" models were not very new at all, as they consisted of the same components as the units already approved by UL, save for the fact that the newer models had a greater quantity and higher wattage of heating elements. All other components were exactly the same.

12.     When these new models were initially presented to UL in January, 2000, the Plaintiff was told by UL personnel, namely, Ken Fetzer and Mark Gragg, that they could be

2

*CASE NO.*

approved and listed pursuant to the already approved S220, S208 and I220 model listings, and that SETS would not have to pay for additional testing.

13.     In reliance on this representation, the Plaintiff purchased significant amounts of inventory to be used in the production of these new models, and began mass production of them.

14.     During the period where the Plaintiff was waiting for the final approval from UL, it had the opportunity to attend a trade show in Canada, at which they intended to create consumer demand for the new models. At this trade show, inspectors would require that all products in the show were UL listed.

15.     Fetzer and Gragg told the Plaintiffs that it was "O.K." for them to attend the trade show and represent that the units would be approved by UL. They said if there were any problems the inspectors could call them. At all times material to this matter, Messrs. Fetzer and Gragg were fully aware the extent to which the Plaintiff was relying on the approval of the new units.

16.     In the meantime, the Plaintiff called the Defendant's agents Fetzer and Gragg repeatedly in order to find out the status of their approval. Notwithstanding, the Plaintiff's calls to the Defendant went unreturned for days at a time.

17.     Tired of the unrelenting and unexplained delays, the Plaintiff thought it would be easier and faster to pay the applicable fees to put the new SETS models through the formal UL approval process rather than "piggy back" them on the already approved units.

18.     On April 1, 2001, the Plaintiff sent a check for $8,400.00 to UL to begin the approval process for the 180 and 220 units.

19.     After sending the 180 and 220 through UL's formal approval process, the Plaintiff still did not receive any word back from UL. As a result, the Plaintiff began complaining to UL

3

CASE NO.

both verbally and in writing that it was losing market share and sales and that its inventory was sitting on its shelves as a result of UL's failure to timely approve the 180 and 220 units.

20.     Shortly after these complaints began, the Defendant, UL, in apparent retaliation against the Plaintiff for their complaints, the Plaintiff was given a laundry list of new requirements that would have to be met before the new units were approved and listed.  The Plaintiff was also required to pay an additional $8,400.00 fee to have the units reinspected for UL approval.

21.     Some examples of the new requirements were the installation of an overcurrent protection device and the production of all other components in the units to UL for review, notwithstanding that the exact same components had been used for years in the S220, S208 and I220 models.

22.     In addition, UL delisted the S220, S208 and I220 units, which had been listed with them since 1996 without event.

23.     In delisting these units, UL reasoned that the five testing centers operated by UL nationwide were not consistently interpreting UL 499 §17 of the UL code, which would require substantial changes to the Plaintiff's existing units in order for them to be deemed "compliant."

24.     However, UL did not require these new modifications from similar approved units like the Seisco Microtherm or the Advance Tech Supreme, among others.

25.     Since the Plaintiff was desperately reliant on the approval of the new units in order to free itself from the large inventory of components it had stocked, it embraced the new UL requirements and complied with each of UL's requests.

26.     Still, in June, 2001, the Defendant had not approved the new units.  Shortly thereafter, the Plaintiff was able to communicate with Messrs. Fetzer and Gragg, who said that they were "walking the new units through the lab for testing themselves."

4

27.     As a result, the Plaintiff registered to attend a trade show in Canada to promote the new units.

28.     July, 2001 came and went with no word from UL, which finally prompted the Plaintiff, on August 3, 2001, to send UL a demand letter, a copy of which is annexed hereto as Exhibit "A."

29.     UL finally approved the Plaintiff's new products in December, 2001.  However, due to the compliance with UL's new requirements, the Plaintiff's average cost per unit is now substantially higher, thereby impeding its ability to effectively compete in the tankless water heater marketplace.

30.     The Defendant, UL has allowed nearly every other tankless water heater manufacturer to maintain their UL listing without complying with the standards that UL has imposed upon SETS.

31.     Yet another example of UL's unfair treatment of the Plaintiff is displayed by its repeated dispatch of inspection teams to the Plaintiff's factory to insure that the Plaintiff is UL compliant while it allows other manufacturers of tankless water heaters to continue manufacturing units that are non-compliant.  Specifically, UL has sent inspectors to the Plaintiff's factory in both March and May, 2002 and has found nothing but full compliance with UL standards from the Plaintiff.

32.     UL's failure to enforce its rules against all of the other tankless water heater manufacturers is illustrated in the photos attached hereto and made a part hereof as Composite Exhibit "B."

33.     Specifically, the Plaintiff has examined the units of four prominent tankless water heater manufacturers and has made the following findings:

5

*CASE NO.*

a. <u>Powerstream Redring RP 12T</u> – This unit is not in compliance with UL requirements since it a single load that exceeds 48 amps. UL requires that this be split over two terminals. This unit is also lacking the pre-wired service panel and breaker required by UL.

b. <u>Advance Tech Industries Super Supreme S220</u> - This unit is not in compliance with UL requirements since it a single load that exceeds 48 amps. UL requires that this be split over two terminals. This unit is also lacking the pre-wired service panel and breaker required by UL. Furthermore, the Triacs used exceed the manufacturers operating specifications as to temperature.

c. <u>Seisco Microtherm 22 KW</u> – This unit operates on 22 KW yet there is no pre-wired service panel and breaker required by UL attached to it.

d. <u>Envirotech 22 KW</u> - This unit operates on 22 KW yet there is no pre-wired service panel and breaker required by UL attached to it, notwithstanding the fact that the parts come packaged separately with the unit. Furthermore, there has been a change in the components used to manufacture the unit, as the original approved unit had a plastic outlet and Envirotech is now using copper.

34.     Even up until the eve of the filing of the instant lawsuit, in response to the Plaintiff's bringing Advance Tech, Inc.'s non-compliance with UL standards to UL's attention, UL refuses to properly enforce its rules. A copy of an email sent to the Plaintiff by UL is annexed hereto as Exhibit "C."

35.     The Advance Tech unit is identical to a unit that UL told the Plaintiff it could not sell. As a result, the Plaintiff has been forced to suffer severe losses due to large inventories of

CASE NO.

that unit, as well as hundreds of thousands of dollars in lost sales from their inability to offer that unit to the consuming public. In fact, average sales of the unit in question were approximately $400,000.00 per year over the two years prior to its discontinuation by UL.

36.     In addition to failing to evenly enforce its rules and regulations on the compliance front, UL has also unevenly policed the use of its trademark as to the Plaintiff *vis a vis* other manufacturers of tankless water heaters.

37.     In April, 2001, when UL initially delisted the Plaintiff's units for failing to comply with UL standards, UL also forced the Plaintiff to take down the portions of its website that stated that its products were UL listed.

38.     However, recently, many other manufacturers are making false claims with regard to their status and relationship with UL and UL has done little if anything to prevent it.

39.     For example, Envirotech Systems includes in many of its advertising circulars that they have "set the new standard for UL" which is a patently false statement illustrated by the fact that Envirotech units are not even compliant with the UL Standards the purportedly set. A sample copy of Envirotech's claims are annexed hereto as Exhibit "D."

40.     Notwithstanding, when this problem was reported to UL it has remained "under investigation" for several months, with little to no action on the part of UL.

41.     UL's failure to enforce their regulations in a manner that is consistent with respect to all manufacturers of tankless water heaters has rendered the Plaintiff unable to effectively compete in the marketplace since it is forced to spend additional funds in the production of each unit which its competitors are not, thereby leading to higher prices and lower profit margins for the Plaintiff's tankless water heater units.

42.     As a result, the Plaintiff, who was an industry leader in terms of sales and market share has now watched its market share dwindle along with its profitability.

7

*CASE NO.*

43.     The Plaintiff has retained the undersigned attorneys to prosecute this matter on their behalf and has agreed to pay them a reasonable fee for their services rendered in connection herewith.

44.     All conditions precedent to the institution and maintenance of this action have been met, performed, excused or have otherwise been waived.

## COUNT I: UNFAIR AND DECEPTIVE TRADE PRACTICES

## PURSUANT TO FLA. STAT. §501.204

45.     The Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46.     The acts and omissions of the Defendant toward the Plaintiff, including, but not limited to:

     a.     the delay in the approval of their new products;

     b.     the delisting of their old units;

     c.     the uneven imposition of UL standards on the Plaintiff's products as opposed to other manufacturers of similar products;

     d.     the failure of UL to actively police the use of its trademark and inaccurate claims about UL listing status by other manufacturers; and

     e.     other acts committed in bad faith and in retaliation by the Defendant against the Plaintiff;

constitute unfair methods of competition, unconscionable acts and practices, and deceptive acts and practices in the conduct of a trade or business in violation of Fla. Stat. §501.204(1).

47.     The Plaintiff is protected by the Unfair and Deceptive Trade Practices Act by virtue of the fact that the Florida legislature ahs explicitly said in Fla. Stat. §501.202 that the

8

*CASE NO.*

DUTPA was designed "to protect the consuming public and legitimate business enterprises" from "unfair methods of competition" and "unfair trade practices" in any business.

48.     A private right of action for a violation of §501.204 accrues in a legitimate business that has suffered a loss as a result of such unfair and deceptive conduct pursuant to Fla. Stat. §501.211(2).

49.     The Plaintiff was deceived by the Defendant's unconscionable and deceptive acts, and as a result, has been injured and suffered a loss in that it has lost a substantial portion of its market share, is forced to operate with a narrower profit margin and higher cost than its competitors, has been unable to sell its inventory, has been forced to have components sit on its shelves as they become obsolete and various other injuries to its business and business reputation.

50.     Consequently, the Plaintiff is entitled to recover its actual damages plus its attorney's fees and court costs from the Defendants pursuant to Fla. Stats. §501.2105 and §501.211(2).

WHEREFORE, the Plaintiff, SETS, hereby demands judgment against the Defendant, UL for money damages, prejudgment interest, attorney's fees, court costs, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II: PROMISSORY ESTOPPEL

51.     The Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

52.     By telling the Plaintiff that it would approve its new units in a timely manner, the Defendant made a promise to the Plaintiff that it reasonably should have expected to induce action on the part of the Plaintiff.

9

(      *CASE NO.*

53.  The Plaintiff did indeed act upon the promise of the Defendant by purchasing large quantities of components in order to bring the new units to market and increase their market share in the tankless water heater market.

54.  Injustice can only be avoided by the enforcement of the Defendant's promise and the approval of the Plaintiff's product.

WHEREFORE, the Plaintiff, SETS, hereby demands judgment against the Defendant, UL for an order enforcing the promise made by UL to approve the Plaintiff's product, for money damages, court costs, and such other and further relief as this Court deems just and proper.

## COUNT III: INTENTIONAL INTERFERENCE WITH

## AN ADVANTAGEOUS BUSINESS RELATIONSHIP

55.  The Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

56.  Prior to its attempts to have the 180 and 220 approved by UL, the Plaintiff had various advantageous business relationships with its distributors and with the general tankless water heater consuming public.

57.  The Defendant was well aware of these advantageous business relationships possessed by the Plaintiff, as the Plaintiff repeatedly disclosed to the Defendant the potential damages in further delays in the UL approval process and the disparate enforcement of UL rules and regulations to its competitors

58.  The Plaintiff was deceived by the Defendant's unconscionable and deceptive acts, and as a result, has been injured and suffered a loss in that it has lost a substantial portion of its market share, is forced to operate with a narrower profit margin and higher cost than its competitors, has been unable to sell its inventory, has been forced to have components sit on its

10

*CASE NO.*

shelves constitute an intentional and unjustified interference with the Plaintiff's relationships with its customers and suppliers.

59.     As a result, the Plaintiff has been injured and suffered a loss in that it has lost a substantial portion of its market share, has been unable to sell its inventory, has been forced to have components sit on its shelves as they become obsolete and various other injuries to its business and business reputation.

WHEREFORE, the Plaintiff, SETS, hereby demands judgment against the Defendant, UL for money damages, prejudgment interest, court costs and such other and further relief as this Court deems just and proper.

## COUNT IV: NEGLIGENCE

60.     The Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

61.     As a quasi-regulatory agency, the Defendant, UL has a general duty to enforce its rules and regulations evenly and consistently so as to provide a general understanding amongst those required to comply with those rules and regulations what is expected of them.

62.     The Defendant also has a duty to provide competent inspections so as to ensure that each manufacturer that it provides a UL listing to is complying with its rules and regulations.

63.     UL has breached each of these duties by failing to evenly and consistently enforce its rules and by failing to provide competent and accurate inspections.

64.     This breach is typified by, but not limited to, UL's failure to determine that the Advance Tech Super Supreme 220 is not compliant with UL standards in a recent inspection, notwithstanding the fact that the defects in that unit are obvious to the naked eye.

65.     As a result of UL's breach of its duty to the Plaintiff, the Plaintiff has suffered damages.

11

Franco & Wallace, P.L., 8751 West Broward Boulevard, Suite 410, Plantation, Florida 33324·Phone 954.236.0492·Fax 954.236.5437

CASE NO.

WHEREFORE, the Plaintiff, SETS, hereby demands judgment against the Defendant,

UL for money damages, prejudgment interest, court costs and such other and further relief as this

Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plainitff hereby demands a trial by jury of all issues contained herein that are so

triable.

Dated: 8-26-02

Respectfully submitted,

FRANCO & WALLACE, P.L.
8751 West Broward Blvd., Suite 410
Plantation, FL 33324
Tel. (954) 236-0492
Fax (954) 236-5437

By: _____
LAWRENCE A. FRANCO
Fla. Bar No. 0176461

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within to be a foregoing to be a true
and correct copy of the original on file
and file in this office of the Clerk of the Circuit
County, Florida
WITNESS my hand
Florida this the ___ day of ___

Deputy Clerk

12

# S T O K   &   A S S O C I A T E S,   P.   A.

ATTORNEYS AT LAW

LAWRENCE A. FRANCO
MARGARET A. KRASICKI
ROBERT A STOK

TURNBERRY PLAZA, SUITE 304
2875 NORTHEAST 191 STREET
AVENTURA, FLORIDA 33180
305.935.4440
FAX 305.935.4470
E-MAIL STOKESQ@MSN.COM

August 3, 2001

**Via U.S. Ceritfied Mail**
**Article No. 7000 1670 0008 5547 0156**
**Return Receipt Requested**

Ms. Margaret C. Wojciechowski, Esq.
Senior Corporate Counsel
Underwriters Laboratories, Inc.
333 Plingsten Road
Northbrook, Illinois 60062-2096

*Re: SETS Systems*

Dear Ms. Wojciechoski:

Pursuant to our conversation of last week I am sending you the correspondence between my client and UL over the past several months with regard to the approval of their model 180 and 220 tankless water heaters, which approval has been withheld by your company for nearly a year and a half. Before getting into the substance of my client's claim against UL for unreasonably delaying the approval process and for misrepresenting the status of the approval, which misrepresentation my client relied upon to its detriment, I would like to outline the history of my client's relationship with UL to make this matter easier to understand.

In 1996, my client submitted its initial tankless water heaters for approval by UL. These units, models 145 and 165, were approved by UL for listing and have been so listed from that point until the present. In late 1999, my client developed new models that could accommodate higher levels of amperage, these models being the 180 and 220. These "new models" are not very new at all. Instead, they consist of the same components as the units already approved by UL, only the newer models have a greater quantity and higher wattage of heating elements. All other components are exactly the same.

When these new models were initially presented to UL in January, 2000, my client was told by Ken Fetzer and Mark Gragg that they could be approved and listed pursuant to the already approved 145 and 165 model listings, and that SETS would not have to pay for additional testing. In reliance on this representation, my client purchased significant amounts of inventory to be used in the production of these new models.

# EXHIBIT "A"

Ms. Margaret C. Wojciechowski, Esq.
August 3, 2001
Page 2

Moreover, during the period where my client was waiting for the final approval from UL, it had the opportunity to attend a trade show in Canada, at which they intended to create consumer demand for the new models. At this trade show, inspectors would require that all products in the show were UL listed. Fetzer and Gragg told my clients that it was "O.K." for them to attend the trade show and represent that the units would be approved by UL. They said if there were any problems the inspectors could call them. At all times material to this matter, Messrs. Fetzer and Gragg were fully aware the extent to which my client's business was relying on the approval of the new units.

My client patiently waited for UL to complete the approval and listing process, consistently calling UL and touching base with UL personnel. However, this was to no avail, as more often than not, my client's call to Messrs. Gragg and Fetzer went unreturned for days at a time. Finally, in April, 2001, my client decided that it would be faster to pay the applicable fees to put the new units through the formal UL approval process. Accordingly, my client sent a check for $8,400.00 to UL. After nearly two months of dilly, dally, delay and excuses on the part of UL, specifically by Mark Gragg and Ken Fetzer, my clients were given a "laundry list" of new requirements that would have to be met for the approval and listing of the new units. For example, UL required that my client add an overcurrent protection device to the new units because they drew more than the acceptable amount of amperage, notwithstanding the fact that an overcurrent protection device was not required of the 145 and 165 units, when they were approved and listed in 1996, nor was it required of similar approved units like the Seisco Microtherm or the Advance Tech Supreme, even though those units also draw excessive amperage.  The list also included other unreasonable demands, like the production of components that were already listed with UL and that were used in the 145 and 165 units which as you know, have been approved and listed with UL since 1996!

Instead of opposing UL's unreasonable requests, my client embraced them, sending UL everything it asked for, complying with each requirement of the laundry list. Yet, nearly ten weeks later, my client has still not gotten an answer from UL. Meanwhile, all of the inventory my client bought is sitting on a shelf, as it is unable to sell the new units because purchasers require the UL approval in order to install them. As a result, my client is suffering through unbelievable financial hardship and has incurred substantial money damages in the form of lost sales, lost business opportunities, devaluation of inventory and loss of goodwill as a result of not being able to sell the 180 and 220 units. Additionally, based upon the representations of Messrs. Fetzer and Gragg made in June that they were "walking the new units through the lab for testing themselves," my client has registered for a trade show in Canada to market the units in the very near future. This show requires that all products displayed be UL listed, and who requires a non-refundable $16,000.00 fee be paid well in advance of the show.  This is an example of the continuing money damages that my client has suffered and will continue to suffer as a result of the misfeasance, malfeasance and nonfeasance of UL. Just today, coincidentally, my clients finally received a letter from UL telling them that the estimated

Ms. Margaret C. Wojciec...owski, Esq.
August 3, 2001
Page 3

date of the completion of testing would be August 31.  <u>This late of a date is simply unacceptable.</u>

Accordingly, **demand is hereby made** for UL to complete the inspection and testing of its product within seven (7) days of the date of this letter.  Your failure to do so will lead to a suit being filed against you by my client for money damages under theories including, but not limited to Unfair and Deceptive Trade Practices, Material Misrepresentations of Material Facts, Breach of Contract and any and all other theories cognizable at law or equity.  Should you wish to discuss this matter further, please feel free to contact me at my office.

**PLEASE TAKE NOTE OF THE FOREGOING AND GOVERN YOURSELVES ACCORDINGLY.**

Sincerely,

LAWRENCE A. FRANCO
For the firm

LAF/eg

S:\Docs\clients\Classic Realty\UL\demand ltr 8-01-01.doc

S T O K  &  A S S O C I A T E S, P. A.

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

Ms. Margaret Wojciechowski
Senior Corporate Counsel
Underwriters Laboratories
333 Plingsten Road
Northbrook, Illinois 60062

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly) — M Grater 2   B. Date of Delivery — 8-9-01

C. Signature
X _____
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

Article Number (Copy from service label)
7000 1670 0008 5547 0750

Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952

## POWERSTREAM REDRING MODEL RP12T
## RATED AT 12 KW / 240 VOLTS / AMPERAGE DRAW 50



**1. POWERSTREAM REDRING**
**Open Box**



**2. Picture of Specification Label**
**Model RP12T**
**WATTS-10000-12000**
**VOLTS-208-240**

**AMPERAGE DRAW ON THESE SPECS**
**10000-208 = 48 AMPS**
**12000-240= 50 AMPS**



**3. Single Phase**
**One terminal block**
**Electrical Connection as stated is 6 gauge wire to a 50 amp breaker.**
**Single Load - Exceeds 48 amps**
**No Split - No Service Panel - No wires-No breakers.**



**4. Close up picture of**
**electrical connection**
**( terminal block )**

Page 1

EXHIBIT "B"

# SUPER SUPREME MODEL S  0
## RATED AT 14.5 KW / 240 VOLTS / AMPERAGE DRAW 60.4



**1. Super Supreme  Box**
**Advanced Tech Industries**



**2. Picture of Specification Label**
 **Model S220**
**WATTS-14 KW**
**AMPS-60**
**VOLTS-208-240**
**Phase-1**
**AMPERAGE DRAW ON THESE SPECS**
**14500-240= 60 AMPS**



**2.  Electronic  Board  different  than original listed.**
**3. Single Phase**
**One terminal block**
**Electrical Connection as stated is 6 gauge wire to a 60 amp breaker.**
**Single Load - Exceeds 48 amps**
**No Split - No Service Panel - No wires- No breakers.**



**4. Triacs - Teccor Q6040J7**
**3 provided, under normal operating conditions triacs exceed manufacturers operating specifications (temperature) .**

**Page 2**

# SEISCO
## Microtherm 22 KW



**1. SEISCO**
**Shipping Box**



**2. Picture of Unit right out of box**
**Unit operates on 22 KW - 240 volts**

**No cables attached**



**3. Conduit for electrical cable connection.**
**No cables attached--**
**No Service Panel Included-**
**No breakers.**

**Envirotech**
**22 KW –240 Volts**



1. Picture of unit right out of box
Unit operates on 22 KW - 240 volts

Conduit for electrical cable connection.
No cables attached--



2. Outlet changed from original unit submitted to UL for listing, original was plactic and it has been changed to copper.



**SETS MODEL S220**
**BLUE CASING**

**SUPREME Model S220**
**WHITE CASING**



**Supreme Model S220**
**12"x 11" x 3"**



**SETS Model S220**
**12"x 11" x 3"**



**Supreme Model S220**
**3 elements**
**1 x 240 5500W**
**2 x 240 4500 W**



**SETS Model S220**
**3 elements**
**1 x 240 5500W**
**2 x 240 4500 W**



**Supreme Model S220**
**3 Thermostats**
**Rated 160 F°**



**SETS Model S220**
**3 Thermostats**
**Rated 160 F°**



**Supreme Model S220**
**3 Position Terminal Block**
**Label with instructions**



**SETS Model S220**
**3 Position Terminal Block**
**Label with instructions identical to Supreme**



**Supreme Model S220**
**Electrical connection Single Phase 240**
**ONE SINGLE LOAD**
**AMPERAGE DRAW 60 AMPS**
**NO SPLIT LOAD**
As you can see from pictures there is no
difference between the Supreme & SETS
Even the mounting holes are the same.



**SETS Model S220**
**Electrical connection Single Phase 240**
**ONE SINGLE LOAD**
**AMPERAGE DRAW 60 AMPS**
**NO SPLIT LOAD**
As you can see from pictures there is no dif-
ference between the Supreme & SETS
Even the mounting holes are the same.



**Supreme Model S220**
**TRIACS Teccor 6040J**
**When tested EXCEEDS**
**OPEARATING TEMPERATURE**
**RANGE**



**SETS Model S220**
**TRIACS Teccor 6040J**
**When tested DOES NOT EXCEED**
**OPEARATING TEMPERATURE**
**RANGE**



**Supreme Model S220**
**Again a comparison with no difference**



**SETS Model S220**
**Again a comparison with no difference**



**Supreme Model S220**
**Again a comparison with no difference**



**SETS Model S220**
**Again a comparison with no difference**

Specifications

| Model | S 220 |
| Watts | 14 Kw |
| Amps | 60 |
| Volts | 208-240 |
| Phase | 1 |
| 50/60 HZ | |
| Serial | 24655 |

**Supreme Model S220**
**Identical specifications as the SETS**
**Model S220 which we were forced to**
**discontinue and re-design as per UL.**

Subj:     **Fw: Advanced Tech International**
Date:     8/14/2002 12:32:38 PM Eastern Daylight Time
From:     ccabrera@sets-systems.com
To:       LFrancoEsq@aol.com
*Sent from the Internet (Details)*


—— Original Message ——
**From:** Tammy.L.Edelen@us.ul.com
**To:** Carlos Cabrera
**Cc:** George.L.Woods@us.ul.com
**Sent:** Wednesday, August 14, 2002 11:05 AM
**Subject:** Advanced Tech International

Dear Mr. Cabrera,

We have completed our investigation into your claims Advanced Tech International does not comply with UL499. We contacted our CAS Department and reviewed their report and UL499 and Advanced Tech International complies with both.

At this time we are closing our investigation into this issue.  If you should have further information concerning Advanced Tech International or can supply us with a tankless water heater we will re-open our investigation.

Sincerely,

**Tammy Edelen**
**Senior Project Handler**
**Field Report Department**
**919 549-1908**
**Fax:  919 547-6149**

-- For more information about UL, its Marks, and its services for EMC, quality registrations and product certifications for global markets, please access our web sites at www.ul.com and www.ulc.ca, or contact your local sales representative. --

********* Internet E-mail Confidentiality Disclaimer *********


This e-mail message may contain privileged or confidential information. If you are not the intended recipient, you may not disclose, use, disseminate, distribute, copy or rely upon this message or attachment in any way. If you received this e-mail message in error, please return by forwarding the message and its attachments to the sender.

Underwriters Laboratories Inc. and its affiliates do not accept liability for any errors, omissions, corruption or virus in the contents of this message or any attachments that arise as a result of e-mail transmission.
*************************************************************

# EXHIBIT "C"

Wednesday, August 14, 2002 America Online: L.F.



**ENVIROTECH** ™
SYSTEMS FURNITURE, INC.



| PRODUCTS | SERVICE | CONTACT US | PRICING | HOME |

*INFORMATION*

The ESI 2000 Concept | Setting the New UL Standard | Safety Factor
Benefits of the ESI 2000 | Choose the ESI 2000 to suit your needs
Standard water heaters are obsolete | Long-Term Reliability | Installation
The ESI 2000 Versus Gas Tank Heaters | Energy Savings | Applications
Maintenance | Guarantee

**The ESI 2000 Concept**

The ESI 2000 is the new and innovative way of heating
water for your home or business. Envirotech Systems has
developed a tankless water heater which is small, easy to
install, and supplies endless amounts of hot water - with
huge savings.

> CLICK HERE
> FOR A
> DETAILED
> EXPLOSION
> DIAGRAM

The ESI 2000 is a microprocessor controlled electric water
heater contained in a compact unit which is designed to fit
any climate. The ESI 2000 saves energy, space, water,
and is suitable for all areas of the US and worldwide.

Envirotech uses the most advanced technology and the highest quality parts in the
construction of the ESI 2000 which assures reliability and longevity of the unit.

Anywhere hot water is now being used or generated, the Envirotech tankless
water heater can perform the task more effectively. Tankless water heaters heat
water only when the hot water faucet is turned on. The ESI 2000 will heat the
water only as long as you require and at the temperature you desire, and will
continue to maintain a precise temperature even if other hot water faucets are
opened, removing the need to cool it back down by mixing in cold water at the
shower, bath, or sink. Electricity is only used when water is required, therefore the
cost of heating water is reduced by 40% - 60%.

⬆TOP

**Setting a New UL Standard**

Envirotech Systems ESI 2000 tankless water heaters have recently received UL
(Underwriters Laboratory) listing. While our product was being tested by UL's
engineers, they came to the conclusion that the ESI 2000's design and functions
were so vastly superior to the other electronic tankless systems they had
previously approved, that they elected to change their standards.

Therefore, to gain approval to ship heaters with the UL Listed mark, Envirotech
must now include with each water heater its own electrical sub-panel. This insures
that each installation is now in compliance with the National Electrical Code. In
addition, UL also required Envirotech to "beef up" its bus bar (electrical connection
bar inside the heater) with a more heat resistant material. Envirotech Systems had
already planned to use such a bus bar for heaters that would be used in
commercial settings, or "continuous use" applications. Underwriters Laboratory
engineers felt that the inclusion in this type of bus bar would make the heaters
much safer, and they therefore elected to make this part of their new standard.

It is important to note that the *ESI 2000 is now the only electronic tankless water
heater that complies with this new standard.* Competitor's models that do not ship
their units with an electrical sub-panel, or that are still using inexpensive plastic
bus bar material are therefore no longer compliant with these new UL Standards.
They should no longer be advertising that they are UL approved, listed, or
compliant.

⬆TOP





EXHIBIT "O"

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.            02018648

02018648

SPACE ENERGY TIME SAVINGS (S.E.T.S.)
SYSTEMS, INC.,

    Plaintiff,

v.

UNDERWRITERS LABORATORIES, INC.,

    Defendant.

_____/

**04**

V. Paluk # 395
8/29/cc

1: 82

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or
Petition in this action on Defendant:

              UNDERWRITERS LABORATORIES, INC.
              c/o CT Corporation System, Registered Agent
              1200 S. Pine Island Road
              Plantation, FL 33324

    Each Defendant is required to serve written defenses to the Complaint or Petition on
Lawrence A. Franco, Esquire, plaintiff's attorney, whose address is: Franco & Wallace, PL, 8751
West Broward Blvd., Suite 410, Plantation, Florida 33324 within twenty (20) days after service
of this Summons on that Defendant, exclusive of the day of service, and to file the original of the
defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately
thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the
relief demanded in the Complaint or Petition.

DATED on _____AUG 28 2002_, 2002.        **HOWARD C. FORMAN**
                                    as Clerk of The Court

                              PASHETTA BLUE
           BY:_____
                    As Deputy Clerk

                              A TRUE COPY
                              Circuit Court Seal

Case No.

## IMPORTANT

A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you may also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificaacion, para contestar la demanda adjunta, por escrito, y presentaria ante este tribunal. Uina llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyedo el numero del caso y los nombres de las partes interesadas. Si usted no ontesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Se no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted eviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

2

Case No.

## IMPORTANT

     Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l''assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entede votre cause. Se vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocat, ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

     Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme cidessous.

3

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

02 – 61319

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

Space Energy time Savings (S.E.T.S.) Systems, Inc

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF BROWARD
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Lawrence A. Franco, Esq.
Franco & Wallace, P.L.
8751 W. Broward Blvd., Suite 410
Plantation, Florida 33324
954-236-5437

## DEFENDANTS

Underwriters Laboratories, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**CIV - HUCK**

**MAGISTRATE JUDGE**
**TURNOFF**

ATTORNEYS (IF KNOWN)
Richard W. Epstein, Esq.
Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A.
100 W. Cypress Creek Road, Suite 700
Fort Lauderdale, FL  33309
Tel. 954.491.1120

**(d)** Circle COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OCKEECHOBEE HIGLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PT | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | A PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates, etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | B SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | A LABOR | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | PRISONER PETITIONS | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | Habeas Corpus | ☐ 871 IRS–Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

PERSONAL INJURY
☐ 362 Personal Injury– Med Malpractice
☐ 365 Personal Injury– Product Liability
☐ 368 Asbestos Personal Injury Product Liability
PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

FLA. STAT. AND COMMON LAW CLAIMS
JURISDICTION BASED UPON 28. U.S.C. §1332

LENGTH OF TRIAL
Via 5 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A ☐ **CLASS ACTION** DEMAND $ N/A   Check YES only if demanded in Complaint
☐ UNDER F.R.C.P. 23

**JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

9/18/02   JUDGE _____   DOCKET NUMBER _____

DATE 9/18/02

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICIAL USE ONLY

RECEIPT # 526219   AMOUNT 150.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____